### GUNTHER v. HOME INS. CO. et al.

### In re BULLYON.

(District Court, D. Montana. February 16, 1923.)

No. 302.

1. **Bankruptcy ⟨key⟩117(2)—All parties to conversion of property by bankrupt are liable for reparation.**

While a bankrupt, during the pendency of bankrupt proceedings against him, may settle a suit brought by him, he holds any proceeds so received as trustee for his creditors, and, if the settlement is made with the present intent to misapply the proceeds, for any such misapplication the parties making payment must make reparation, if at the time of the settlement they had reasonable grounds for believing that bankrupt intended such a conversion, in view of Rev. Codes Mont. 1921, §§ 7887, 7900, 7901.

2. **Bankruptcy ⟨key⟩303(3)—Evidence held to show that defendants, who had made settlements with bankrupt, were liable to estate for bankrupt's conversion of proceeds.**

In an action by a trustee against parties making settlements with bankrupt pending bankrupt proceedings, evidence *held* to show that these parties made the settlements under such circumstances as to render them liable for bankrupt's subsequent conversion of the proceeds.

3. **Bankruptcy ⟨key⟩304—Court, not jury, responsible for just administration of bankrupt's estate.**

Where a verdict for defendants, in an action by trustee against parties who aided bankrupt in converting his assets to his own use, was clearly wrong, the court will not approve the verdict, for the court, and not the jury, is responsible for a just administration of bankrupt's estate.

4. **Action ⟨key⟩37—Equity suit tried on law side determined as of equity side.**

Where a case was tried on the law side, when it should have been tried on the equity side, it may be determined as of the equity side.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Charles Gunther, trustee of the estate of Marion A. Bullyon, bankrupt, against the Home Insurance Company of New York and others. On defendants' motion to approve a general verdict and special findings favorable to them, and enter a decree accordingly. Motion denied, and decree entered against defendants.

Binnard & Rodger, of Butte, Mont., and Todd, Fosnes & Sterling, of St. Paul, Minn., for plaintiff.

Maury & Melzner, Frank & Gaines, and Nolan & Donovan, all of Butte, Mont., for defendants.

BOURQUIN, District Judge. This is a rehearing or new trial of the case reported in 276 Fed. 575. As there suggested, it is essentially an equity proceeding analogous to those summary in bankruptcy or to a bill in equity to compel the bankrupt and those who aided him in appropriation of property of his estate after this court's jurisdiction had attached, to account for the property or its value.

Nevertheless it was brought on the law side of the court and tried to a jury, and now is defendants' motion in effect to approve a general verdict and special findings favorable to them and to enter decree accordingly. The issues sufficiently appear in said report. The evidence is that of the former trial and additional items, mainly to supply as they do the missing links in said report referred to and which necessitated this trial. To avoid repetition the former decision, reported as aforesaid, is adopted by reference in so far as the law, facts, and findings therein are concerned.

In addition the evidence discloses, and it is found, that of Bullyon's career, conduct, repute, whereabouts, business, and property defendants made little inquiry and had little knowledge, either before or after the settlement; that the merchandise insured was located in a one-room building with a rear shed on a lesser street of Butte; that the policies aggregated $10,000 and in the actions upon them Bullyon claimed that amount; that he had no other known property, save a claim for $6,000 alleged to have been orally pledged to his bondsman in the arson proceedings against Bullyon, denied by the bondsman, and which Maury esteemed so doubtful he would not sue upon it; that Maury of necessity advanced Bullyon's costs in the insurance cases, and was reimbursed only after their settlement; that at all times material herein Bullyon was insolvent to the knowledge of defendants; that Maury knew of and acquiesced in the condition imposed by Frank at settlement, viz. that of the settlement funds Frank retained $600 for his and other claims against Bullyon; that of said funds Maury required and received $1,363 for services in the insurance cases; that the balance of the said funds were by Bullyon converted to his own use, and none delivered to his trustee in bankruptcy; that not only did none of defendants inquire of Bullyon his intent in respect to the balance of said funds they left to him, but none of them even advised him of his duty therein; that, although in resisting the bankruptcy proceedings, it was Bullyon's duty to appear at the hearing and submit himself and his books and accounts to examination, or be presumed insolvent, it does not appear his counsel advised him thereof, or examined said books and

accounts, or prepared for said hearing other than to tell Bullyon to attend the hearing, and which the latter did not; that Frank knew of several acts of bankruptcy by Bullyon; that the evidence at a preliminary hearing on the arson charge, to which Bullyon was subjected, was by the insurance companies' adjuster furnished to Frank, who thereupon amended the answers in the insurance cases to set up the defense of arson by Bullyon; that Frank believed Bullyon guilty of arson, but doubted the sufficiency of evidence to persuade a jury; that Frank assured Maury the fire was a "friction fire"—that is, "caused by a small stock of goods rubbing against large policies"; that shortly after the settlement Bullyon disappeared for about a year, and for that time evaded examination before the referee in bankruptcy, during which, and until themselves so examined, defendants refused to give to the trustee any information in respect to the settlement; that in the bankruptcy proceedings Bullyon's debts exceeded $6,000, are unpaid, and the trustee received and has none of Bullyon's property save the $140 restored by Frank; that the misapplications of the proceeds of the settlement as aforesaid were intended by Bullyon at the time of settlement and were then known to and shared by defendants.

[1] As stated in the former decision, to the knowledge of defendants at the time of settlement Bullyon was trustee of his property for the benefit of his creditors and subject to the jurisdiction of this court in administration in bankruptcy proceedings then pending; that Bullyon, the property, and defendants are subject to the law of trusts, including that of fraudulent conveyances and involuntary trusts arising from them, and to the applicable principles of equity; that, though Bullyon could legally settle the insurance cases, yet, if settled, not in good faith, but with present intent to misapply the proceeds, for any such injurious misapplication defendants are obligated to reparation, if at the time of the settlement they had "reasonable grounds for believing" that he thus intended, or if they knew that he was in "the very transaction converting them to private uses." See Smith v. Ayer, 101 U. S. 328, 25 L. Ed. 955; Darnaby v. Watts (Ky.) 28 S. W. 338; Story, Eq. Jur. § 1131a; sections 7887, 7900, 7901, R. C. Montana.

[2] In the light of these principles of hornbook law, the evidence is convincing that defendants are liable to reimburse the trustee for Bullyon's devastavit of this trust estate. No only do the facts and circumstances of the time of the settlement, and then known to defendants, serve as notice, afford reasonable grounds for believing Bullyon intended misapplication or conversion of the fruits of the settlement, but defendants had actual knowledge thereof, in that they aided him therein to their own advantage, known to, approved, and defended by all of them. They are his accomplices.

The circumstances of notice and the "badges of fraud" are abundant to indicate to any person of average intelligence the high probability that Bullyon intended to take of the settlement fund whatever was left to him by Frank and Maury, and to convert it to his own private uses—intended to follow their example. And defendants must be held to the intelligence and diligence of the average man. Not their verbal disclaimers now, but their reactions to material stimuli then, their signifi-

cant behavior, is the better criteria by which to determine, not only what they ought to have known, but what they actually did know. It is especially noteworthy that, in the hasty settlement for less than half of Bullyon's claim on eve of bankruptcy hearing and insurance trials, neither Frank, Maury, nor Binnard & Rodger, for whose client Frank retained the $140 in the former decision mentioned, were willing to trust the unknown, itinerant, insolvent, prospective bankrupt, and accused "fire bug," Bullyon, with any of the proceeds until they severally had got theirs. Of course not. For their own benefit defendants appropriated part of the settlement proceeds. They misapplied trust funds, in which others were entitled to share, and secured more than they were entitled to.

That Bullyon would finish what they had begun was a natural, probable, and reasonably to be anticipated consequence. It may be defendants assumed that this settlement and division of the proceeds were legitimate strategy; it may be they hoped or even believed the bankruptcy proceedings would fail, or otherwise that they could not be successfully brought to account. In either case they took the hazard of what proved to be their erroneous judgment, and now they must take the consequences.

[3] The motion to approve the verdict and special findings is denied. They are clearly wrong. Not the jury, but the court, is responsible for just administration of this trust estate and for righteous determination of this controversy.

[4] That this proceeding was brought and tried as of the law side of the court does not prevent its determination as of the equity side, where of right it belongs. See Liberty Oil Co. v. Bank, 43 Sup. Ct. 118, 67 L. Ed. —— (Nov. 27, 1922). In the matter of decree, in the circumstances (of dubious aspect), it is believed and found that Maury ought to be and he is allowed the reasonable value of his services in the insurance cases out of which the settlement and its proceeds were derived, in amount $500. (Maury denies any part in the settlement.)

For the balance of the proceeds of settlement, less the $140 Frank paid to the trustee, decree will be entered against all defendants, save Frank, and against him for the like amount less the $460, for which judgment was entered against him upon the former trial. Obviously, the missing links in the former trial supplied, all defendants equally with Frank are liable for the $460 last aforesaid, at the very least.

Legal interest is awarded from November 9, 1918, and costs.